# Third District Court of Appeal

## State of Florida

Opinion filed July 1, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-0117
Lower Tribunal No. 23-16851-CA-01
_____


**Jack Kessler,**
Appellant,

vs.

**Alexander Ayzen and Alla Ayzen,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

Dentons US LLP, and Jonathan H. Kaskel and Elizabeth C. DeGori, for appellant.

Heise Suarez Melville, P.A., and Thomas S. Ward, for appellees.


Before FERNANDEZ, GORDO and GOODEN, JJ.

GOODEN, J.

This case concerns competing riparian rights of neighbors along the Intercoastal Waterway. Finding no reversible error, we affirm the trial court's final summary judgment in all respects, but write to address one issue.

## I.

Appellant Jack Kessler and Appellees Alexander and Alla Ayzen are neighbors in a townhome community in Aventura. Both own homes on the Intercoastal Waterway. The Kessler home is directly north of the Ayzen home. Both are upland properties that have direct, unobstructed views of the Intercoastal.



**Figure A.** Kessler Residence           **Figure B.** Ayzen Residence

In 2020, the Ayzens sought to build a marginal dock[1] and boatlift immediately behind their home. They applied for a Class I permit with the

---

[1] A marginal dock is "a dock placed adjacent to and parallel with and no more than 10 feet waterward from the shoreline or seawall, bulkhead or

Miami-Dade Division of Environmental Resources Management. The proposed dock is approximately five feet wide and twenty-one feet long. It would have a 20,000-pound capacity boatlift. The dock would not extend in front of any neighbor's property. The homeowners' association consented to the construction of the proposed dock.

But the installation would partially obstruct Kessler's view of the Intercoastal on one side by 32 degrees.



As a result, he objected.

Despite his objection, the Division of Environmental Resources Management recommended that the Class I permit be approved. The County's Department of Regulatory and Economic Resources similarly did so. So did the U.S. Army Corps of Engineers.

---

revetment." Fla. Admin. Code R. 18-21.003(36). Notably, the property located directly south of the Ayzen property has a marginal dock.

The Board of County Commissioners considered the permit at two separate public hearings. Kessler appeared and opposed the request. At the second meeting, the Board approved the application by adopting Resolution No. R-933-22 in an 11-0 vote.

Kessler then filed a petition for writ of certiorari in the appellate division of the Eleventh Judicial Circuit. In its response, the County noted that the permit did not adjudicate rights of the parties, recognizing that riparian rights were not at issue in those challenges. The appellate panel affirmed the Board's decision. Kessler sought second-tier certiorari relief. Our Court denied the petition. See Kessler v. Miami-Dade Cnty., 365 So. 3d 1230 (Fla. 3d DCA 2023).

While the petition was pending in our Court, Kessler filed a one-count complaint against the Ayzens for declaratory judgment, seeking to determine "whether the Ayzens' current plan for a dock impermissibly infringes upon Mr. Kessler's riparian or littoral right to an unobstructed view of the Intracoastal Waterway and regarding the extent of the parties' riparian or littoral rights." The Ayzens counterclaimed, seeking a declaratory judgment that the proposed dock and boatlift did not violate Kessler's riparian rights.

Subsequently, the Ayzens moved for summary judgment. They argued the dock and boatlift will not impermissibly infringe on Kessler's

4

riparian rights since it only partially obstructed the view on one side. Kessler, however, focused on whether the dock and boatlift was necessary.

After hearing arguments from the parties, the trial court granted the Ayzens' motion and entered final summary judgment. Citing Hayes v. Bowman, 91 So. 2d 795 (Fla. 1957), the trial court reasoned that "Kessler has a right to an unobstructed view over an area in the direction of the Waterway, such right is not exclusive against all interference when looking upon the Waterway from the upland property in a particular direction." It deemed that the dock and boatlift did not "substantially and materially" interfere with Kessler's view of the Intercoastal Waterway. Therefore, no reasonable jury could find that the construction violated Kessler's riparian rights. This appeal followed.

## II.

We review the trial court's final summary judgment de novo. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

## III.

Like other aspects of property law, riparian rights are rooted in Roman and English common law traditions. See generally PAJ Inv. Grp., LLC v. El Lago N.W. 7th Condo. Ass'n, Inc., 405 So. 3d 401, 406–07 (Fla. 3d DCA

2024); Cynthia J. Bannon, A Short Introduction to Roman Water Law, 66 Memoirs of the American Academy in Rome 1–18 (2021). Under these traditions, the sovereign held title in the beds of navigable waters for the benefit of and in trust for its people. See Sir Matthew Hale, A Treatise Relative to the Maritime Law of England 10–11 (Hargrave's Law Tracts 1787). See also Shively v. Bowlby, 152 U.S. 1, 13 (1894); Martin v. Waddell's Lessee, 41 U.S. 367, 422 (1842). Its citizens retained public rights of "navigation, commerce, fishing, bathing, and other easements allowed by law in the waters." Brickell v. Trammell, 82 So. 221, 226 (Fla. 1919). See also James Kent, Commentaries on American Law 344 (1828); Joseph Angell, A Treatise on the Right of Property in Tide Waters 20 (1826).

After the Revolutionary War, these rights were vested in the states and the people, respectively. Brickell, 82 So. at 226. When Florida was later admitted into the Union, it did so on equal footing. Broward v. Mabry, 50 So. 826, 829–30 (Fla. 1909); State v. Black River Phosphate Co., 13 So. 640, 644 (Fla. 1893). These principles are known as the public trust doctrine and have been enshrined in our Constitution. See Art. X, § 11, Fla. Const. (1970) ("The title to lands under navigable waters, within the boundaries of the state, which have not been alienated, including beaches below mean

6

high water lines, is held by the state, by virtue of its sovereignty, in trust for all the people.").

In addition to those general rights available to the public, Florida upland owners hold certain special rights that are incidental to their ownership. Ferry Pass Inspectors' & Shippers' Ass'n v. White's River Inspectors' & Shippers' Ass'n, 48 So. 643, 644–45 (Fla. 1909). These rights include the right to access, the right to use, the right to an unobstructed view, and the rights of alluvion and dereliction. Id. See also Bd. of Trs. of the Internal Improvement Tr. Fund v. Sand Key Assocs., Ltd., 512 So. 2d 934, 936 (Fla. 1987); Thiesen v. Gulf, F. & A. Ry. Co., 78 So. 491, 507 (Fla. 1917). These rights were codified in 1953. Ch. 28262, § 1, Laws of Fla (1953) (codified at § 253.141, Fla. Stat. (2024)); see also § 161.201, Fla. Stat. (2024) (noting upland owners have "common-law riparian rights . . . including but not limited to rights of ingress, egress, view, boating, bathing, and fishing").

"These special rights are easements incident to the riparian holdings, and are property rights that may be regulated by law, but may not be taken without just compensation and due process of law." Broward, 50 So. at 830. Indeed, Florida courts have found unconstitutional takings when such rights were "substantially and materially" impaired. See Game & Fresh Water Fish Comm'n v. Lake Islands, Ltd., 407 So. 2d 189, 193 (Fla. 1981) (holding

7

regulation was unconstitutional as to upland owner because it substantially denied the right of access); Lee Cnty. v. Kiesel, 705 So. 2d 1013, 1016 (Fla. 2d DCA 1998) (finding an unconstitutional taking where bridge substantially and materially obstructed upland owners' right to view).  Cf. Duval Eng'g & Contracting Co. v. Sales, 77 So. 2d 431, 434 (Fla. 1954) (concluding that there was no taking where there was only a slight impairment of rights and owners did not show a material obstruction to the rights to access and view).

Both the Ayzens and Kessler have special riparian rights.  Neither party's rights takes precedence.  Importantly, "these rights may not be so exercised as to injure others in their lawful rights." Ferry Pass, 48 So. at 645. See also Taylor v. Tampa Coal Co., 46 So. 2d 392, 394 (Fla. 1950) ("[E]ach riparian owner has the right to use the water in the lake for all lawful purposes, so long as his use of the water is not detrimental to the rights of other riparian owners.").  Each right "must therefore be measured in reasonable relation to one another." Geise v. Fleck, 51 Fla. L. Weekly D694, 2026 WL 904860, at *6 (Fla. 6th DCA Apr. 2, 2026). So we must examine each right at issue.

The Ayzens seek to exercise their rights to access and use the water. This is an affirmative easement as it entitles one to enter and use the property of another—the servient tenant who owns the bed of the navigable

8

water.  <u>Walton Cnty. v. Stop Beach Renourishment, Inc.</u>, 998 So. 2d 1102, 1112 (Fla. 2008).  In accordance with these rights and with permission from the appropriate authority, an upland owner may erect a dock in front of their property to do so.  <u>Williams v. Guthrie</u>, 137 So. 682, 685 (Fla. 1931); <u>Freed v. Miami Beach Pier Corp.</u>, 112 So. 841, 844 (Fla. 1927); <u>Ferry Pass</u>, 48 So. at 645.  The dock must be built "in a manner that will not unreasonably restrict or infringe upon the riparian rights of adjacent upland owners."  Fla. Admin. Code. R. 18-21.004(3)(C).

The Ayzens' plans are for a marginal dock that is approximately five feet wide and twenty-one feet long.  It would have a 20,000-pound capacity boatlift.  The dock and boatlift are immediately in front of their property.  This is a reasonable and lawful use of their rights.

On the other hand, Kessler seeks to exercise his right to an unobstructed view of the water.  This is a negative easement as it restricts the use of the property of another—again, the servient tenant who owns the bed of the navigable water.  <u>Walton Cnty.</u>, 998 So. 2d at 1112.  Yet this right only entitles Kessler to a "direct, unobstructed view" of the water.  <u>Hayes</u>, 91 So. 2d at 801.  It does not include an unobstructed view in all directions—to the exclusion of all other's rights.  <u>Id.</u> (holding that appellants still had a direct, unobstructed view of channel even though another sought to fill in

9

submerged waters and the appellants could no longer see Stetson Law School across the water); Broward, 50 So. at 830 ("Those who own land extending to ordinary high-water mark of navigable waters are riparian holders, who . . . have in general certain special rights in the use of waters opposite their holdings. . . ."). See also Geise, 51 Fla. L. Weekly D694, at *15 ("Appellants argue they have a right to an unobstructed access to and view of the lake adjacent to their private property. But we reject Appellants' framing of the issue. Appellants have a right to a *reasonably* unobstructed access to and view of the lake—not a completely unobstructed access to and view of the lake."); Mickel v. Norton, 69 So. 3d 1081, 1083 (Fla. 2d DCA 2011) ("The Nortons still have a direct and unobstructed view of the Sunrise Waterway, which is the only body of water adjoining their lot. At most, the Nortons established that the fence obstructed their view of the Mickels' side yard and Alligator Bay which lies to the west on the other side of the Mickels' lot. Because the Nortons' lot is not bordered by Alligator Bay, they are not entitled to the private or special riparian rights incident to the ownership of land bordered by that body of water, including the right to a view of the bay.").

When viewing these competing rights in relation to each other, the Ayzens are entitled to build a dock and boatlift, provided they do not infringe upon Kessler's rights. We find that the Ayzens' proposed structure, situated

directly in front of their own property, does not injure Kessler's "direct, unobstructed" view of the water in front of his. See Ferry Pass, 48 So. at 645. Ultimately, both parties can reasonably exercise their rights without injuring the other. The dock and boatlift do not unreasonably obstruct or violate Kessler's riparian rights.

Nonetheless, Kessler claims that the trial court erred by applying the wrong test to analyze his rights. He asserts that the trial court applied the analysis in takings cases—whether the dock and boatlift substantially and materially obstructed his right to a view. See Lee Cnty., 705 So. 2d 1013; Game & Fresh Water Fish Comm'n, 407 So. 2d 189. While it is true that the trial court included this in its analysis, a careful review of the order shows that was not the singular focus of the trial court. It also properly considered whether the Ayzens' dock and boatlift injured Kessler's rights. But even if it had not, we would still find that the trial court correctly held that Kessler was not entitled to relief. See Gessner v. S. Co., 51 Fla. L. Weekly S143, 2026 WL 1488160, at *7 n.10 (Fla. May 28, 2026). No reasonable jury could find that the marginal dock and boatlift violates Kessler's riparian rights. See Ibarra v. Ross Dress for Less, Inc., 350 So. 3d 465, 467 (Fla. 3d DCA 2022). So, we affirm.

Affirmed.

11